**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| CHARLES KIRKLAND JOHNSON<br><br>Plaintiff,<br><br>v.<br><br>SOUTHERN COMPANY SERVICES, INC.,<br><br>Defendant. | Civil Action File No.<br><br>____________________<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES**

Plaintiff Charles Kirkland Johnson (a/k/a "Kirk" Johnson) files this Complaint for Equitable Relief and Damages against Defendant Southern Company Services, Inc. ("Defendant" or "SCS") showing the Court the following:

**INTRODUCTION**

1. This is an action for age discrimination and retaliation in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq*. (the "ADEA"); for disability discrimination, failure to accommodate, "regarded as" discrimination, interference, and retaliation in violation of Title I of the Americans with Disabilities Act of 1990 ("ADA"), as amended by the Americans with Disabilities Amendments Act of 2008, 42 U.S.C. § 12101 *et seq.*, and retaliation and

interference under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*.

2. Mr. Johnson seeks injunctive and declaratory relief, back pay and lost benefits, front pay or reinstatement to a full-time position with commensurate benefits, liquidated damages, compensatory and punitive damages, attorney's fees and costs of litigation, and pre- and post-judgment interest.

## JURISDICTION AND VENUE

3. This Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

4. Mr. Johnson is a citizen of the United States and a resident of the State of Georgia and submits himself to the personal jurisdiction of this Court.

5. SCS is a for-profit corporation that does substantial business within this judicial district and may be served with process through its Registered Agent, Laura Hewett, at 30 Ivan Allen Jr. Blvd, Atlanta, Georgia 30308.

6. SCS is subject to the personal jurisdiction of this Court.

7. Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391 because SCS conducts business in this district and division and the unlawful actions and practices alleged herein were committed within the Northern District of Georgia.

## THE PARTIES

8. Mr. Johnson formerly worked for SCS as a Senior Vendor Manager.

9. Mr. Johnson was 60 years old when SCS terminated his employment.

10. At all times relevant hereto, Mr. Johnson was subject to the protections of the ADEA, 29 U.S.C. § 621 *et seq.*, not to be discriminated against on the basis of age.

11. As described below, Mr. Johnson suffered from Generalized Anxiety Disorder (GAD), which is a condition that substantially limits one or more major life activities, including neurological and brain functions.

12. At all times relevant hereto, Mr. Johnson was an individual with a disability as that term is defined by 42 U.S.C. § 12102(1) because of his actual impartment, his record of impairment, and because Defendant regarded him as having an impairment.

13. Mr. Johnson is capable of performing the essential functions of his former job at SCS as a Senior Vendor Manager with or without accommodation.

14. As described below, Mr. Johnson suffered from a serious health condition as defined by 29 U.S.C. § 2611.

15. Mr. Johnson had been employed with SCS for more than 12 months and worked more than 1250 hours in the 12 months preceding his serious health condition.

16. At all times relevant hereto, Mr. Johnson was an "eligible employee" within the meaning of the FMLA, 29 U.S.C. § 2601 *et seq*.

17. At all times relevant hereto, SCS was an "covered employer" within the meaning of the ADEA, 29 U.S.C. § 621 *et seq*. because it engaged in commerce or in an industry affecting commerce and employed more than 20 persons for each working day in each of 20 calendar weeks in the current or preceding calendar year.

18. At all times relevant hereto, SCS is an "covered employer" within the meaning of the ADA, 42 U.S.C. § 12101 *et seq*. because it engaged in commerce or in an industry affecting commerce and employed more than 15 persons for each working day in each of 20 calendar weeks in the current or preceding calendar year.

19. At all times relevant hereto, SCS is an "covered employer" within the meaning of the FMLA, 29 U.S.C. § 2601 *et seq*. because it had more than 50 employees within a 75-mile radius of the location at which Mr. Johnson was employed in each of 20 or more consecutive calendar weeks in the current or preceding year.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

20. Mr. Johnson filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), Charge No. 410-2024-04467, alleging discrimination and retaliation in violation of the ADEA and ADA within 180 days of the occurrence of the acts of which he complains.

21. On June 1, 2026, the EEOC issued a Determination and Notice of Rights to Mr. Johnson based on Charge No. 410-2024-04467.

22. Mr. Johnson has exhausted his administrative prerequisites for filing this lawsuit.

23. Mr. Johnson brings this suit within ninety (90) days of receipt of his Determination and Notice of Rights.

## STATEMENT OF FACTS

### *Mr. Johnson's next-level supervisor, Ms. Tonya Bryant, establishes a pattern of ageist and ableist conduct.*

24. Mr. Johnson began working for SCS in April of 2017.

25. From his date of hire until October 2022, Mr. Johnson's direct supervisor was Chris Horace.

26. As early as 2018, Mr. Horace witnessed his supervisor, Tonya Bryant, make ageist and ableist remarks in management team planning meetings.

27. Specifically, Ms. Bryant stated that SCS had "too many people over 60," that one vendor was "old as dirt," and that the managers were "hurting [SCS] on age" (or words to that effect).

28. Ms. Bryant also presented a pie chart that showed the age distribution of SCS employees and specifically identified the percentage of SCS employees aged 60 and older.

29. In reference to employees aged 60 and over, Ms. Bryant asked her subordinate` managers: "what are *you* doing with them?"

30. At one point, Mr. Horace asked Ms. Bryant why she was concentrating on employees 60 and over, and her response was: "because they get sick."

31. Ms. Bryant had access to an SCS internal computer system that allowed her to see the birthdays and ages of subordinate employees.

32. At the time of these comments, Ms. Bryant was in her early 40s and Mr. Horace was in his late 50s.

33. Mr. Horace reported these remarks to SCS human resources, but nothing was done.

***Ms. Bryant targets Mr. Johnson because of his age, disability, and/or utilization of medical leave.***

34. Mr. Johnson's performance at SCS was historically good, and by 2022 he had been promoted to Senior Vendor Manager.

35. In 2022, Ms. Bryant was in her mid-40s, Mr. Horace was in his early 60s, and Mr. Johson turned 59.

36. In late 2021 or early 2022, one of Mr. Horace's subordinates, Ms. Mary Barr, requested FMLA leave and to work from home to care for a parent.

37. Upon information and belief, Ms. Barr is approximately the same age as Mr. Johnson.

38. Mr. Horace granted Ms. Barr's request and allowed her to work from home.

39. However, in early 2022, Ms. Bryant asked Mr. Horace to terminate Ms. Barr's employment because of her use of FMLA leave.

40. Around this time, Ms. Bryant also directed Mr. Horace to start documenting Mr. Johnson's performance.

41. Soon after, in February 2022, Mr. Horace took medical leave.

42. While Mr. Horace was on leave, Ms. Barr was transferred to another manager and, soon after, resigned.

43. Mr. Sohil Probanderwala filled in as Mr. Johnson's supervisor while Mr. Horace was on leave.

44. Mr. Horace returned from medical leave in August 2022.

45. Shortly after returning from leave, Mr. Horace announced his retirement.

46. In November 2022, at his retirement party, Mr. Horace warned Mr. Johnson that Ms. Bryant targets employees for termination based on their age and medical conditions.

47. Specifically, Mr. Horace told Mr. Johnson about Ms. Bryant's comments in past manager meetings, that Ms. Bryant targets older employees because of their use of medical leave, and that human resources did not follow up on his (Mr. Horace's) prior complaint about Ms. Bryant's conduct.

48. Mr. Johnson had just turned 59 shortly before this conversation with Mr. Horace and immediately became concerned about his continued employment at SCS under Ms. Bryant.

49. Ms. Bryant was aware of either Mr. Johnson's approximate age (through personal observations), or his specific age (through SCS personnel records).

50. Mr. Horace was replaced by Mr. Neeraj Gulati.

51. In early 2023, Mr. Johnson underwent his 2022 performance review.

52. Although Mr. Gulati nominally conducted Mr. Johnson's performance review, he told Mr. Johnson the substance of the review came from Ms. Bryant because he had not supervised Mr. Johnson long enough to fairly evaluate his work.

53. Neither Mr. Probanderwala nor Mr. Horace provided, or were asked to provide, input on Mr. Johnson's 2022 performance review even though they were Mr. Johnson's supervisors during the relevant period.

54. Mr. Johnson's 2022 performance review was the worst review he had received at SCS and falsely accused him of poor performance.

55. Soon after, around March of 2023, Ms. Bryant promoted Mr. Todd Settelmeyer to supervise Mr. Johnson.

56. Mr. Settlemyer was in his early 50s and a junior member of the vendor management team at the time of his promotion, having only been hired by SCS in 2020.

57. In May 2023, Mr. Johnson was diagnosed with Generalized Anxiety Disorder (GAD).

58. Mr. Johnson's symptoms included depressed mood, chest pain, and general exhaustion.

59. Mr. Johnson's medical provider initially recommended that he take medical leave to alleviate his symptoms; however, Mr. Johnson was concerned that

if he took medical leave he would be terminated by Ms. Bryant, just as Mr. Horace had warned.

60. In June 2023, Mr. Settlemyer issued Mr. Johnson with a vague and baseless “level one reminder” discipline.

61. Mr. Settlemyer’s actions were directed and approved by Ms. Bryant.

62. Around this time, Mr. Johnson contacted SCS human resources and reported that he believed he was going to lose his job at the end of the year when he turned 60.

63. However, because Mr. Johnson knew human resources did not followed up on Mr. Horace’s complaint against Ms. Bryant, he believed that filing his own complaint would only hasten his termination.

64. Mr. Johnson’s symptoms did not improve, and on the advice of his doctor he requested and received continuous FMLA leave from August 7, 2023, to September 5, 2023 (approximately four weeks) to alleviate his GAD symptoms.

65. Shortly before Mr. Johnson returned from continuous FMLA leave, he requested intermittent FMLA leave and intermittent leave as an ADA accommodation so that he could take off work as needed in response to his ongoing GAD symptoms.

66. SCS granted Mr. Johnson's requests only through the end of October 2023, even though neither Mr. Johnson nor his doctor requested that end date and both expected Mr. Johnson's need for intermittent leave to extend beyond the end of October.

67. Mr. Johnson requested that SCS's third party leave administrator send his doctor the necessary forms to extend his intermittent FMLA/ADA accommodation beyond October 2023, but the necessary forms were never sent.

68. Mr. Johnson turned 60 in October 2023.

69. On November 1, 2023—one day after Mr. Johnson's intermittent FMLA approval and ADA leave accommodation expired, and less than one month after his 60th birthday—SCS terminated Mr. Johnson's employment.

70. Ms. Bryant directed and/or approved of Mr. Johnson's termination.

**COUNT I**
**<u>Discrimination in Violation of the ADEA</u>**

71. Plaintiff incorporates by reference all the preceding paragraphs of the Complaint.

72. At all times relevant hereto, SCS has been subject to the requirements of the ADEA, 29 U.S.C. § 621 *et seq.*, not to discriminate against its employees on the basis of age.

73. At all times relevant hereto, Mr. Johnson was subject to the protections of the ADEA.

74. SCS violated the ADEA when it terminated Mr. Johnson because of his age.

75. SCS also violated the ADEA when it denied him protected medical leave (including protection from retaliation for taking medical leave) because of his age.

76. The effect of SCS's conduct has been to deprive Mr. Johnson of equal employment opportunities and benefits due to him.

77. SCS's discrimination has caused Mr. Johnson damages including, but not limited to, lost wages and benefits.

78. SCS's discriminatory acts were willful within the meaning of the ADEA, and Mr. Johnson is therefore entitled to liquidated damages under 29 U.S.C. § 626(b).

**COUNT II**
**Discrimination and Failure to Accommodate in Violation of the ADA**

79. Plaintiff incorporates by reference all the preceding paragraphs of the Complaint.

80. At all times relevant hereto, SCS has been subject to the requirements of ADA not to discriminate against its employees on the basis of their disability status.

81. At all times relevant hereto, Mr. Johnson was an individual with a disability as defined by the ADA, 42 U.S.C. § 12102 (1)(A).

82. At all times relevant hereto, Johnson has been a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111(8) and able to perform the essential functions of his job.

83. SCS was aware of Mr. Johnson's disability and his history and record of disability.

84. SCS failed to reasonably accommodate Mr. Johnson when it terminated his employment following his request for intermittent medical leave instead of engaging in an interactive process to find reasonable accommodation.

85. Additionally, SCS terminated Mr. Johnson's employment because of his disability.

86. SCS's actions violated Section 102 of the ADA, 42 U.S.C. § 12112, which prohibits discrimination based on disability status and requires reasonable accommodations for disabilities.

87. SCS's actions in discriminating against Mr. Johnson because of his disability and refusing to accommodate his disability were committed with deliberate intent to harm Mr. Johnson and his federally protected rights or, alternatively, with reckless disregard for his rights to be free from discrimination because of his disability and to receive reasonable accommodation for his disability.

88. The effect of SCS's conduct has been to deprive Mr. Johnson of equal employment opportunities and benefits due to him.

89. The actions taken against Mr. Johnson by SCS have caused him to suffer both monetary and non-monetary damages.

90. As a direct and proximate result of SCS's unlawful employment practices, Mr. Johnson suffered injuries for which he is entitled to recover equitable relief and compensatory damages, including economic losses and emotional distress, attorney's fees, and costs of litigation.

**COUNT III**
**"Regarded As" Discrimination in Violation of the ADA**

91. Plaintiff incorporates by reference all the preceding paragraphs of the Complaint.

92. At all times relevant hereto, SCS has been subject to the requirements of Title I of the Americans with Disabilities Act, as amended (42 U.S.C. § 12101 *et seq*.)

93. At all times relevant hereto, SCS regarded Mr. Johnson as an individual with a disability as defined by the ADA, 42 U.S.C. § 12102 (1)(A).

94. SCS terminated Mr. Johnson's employment because of the disability it regarded him as having.

95. SCS's actions violated Section 102 of the ADA, 42 U.S.C. § 12112, which prohibits discrimination based on an actual or perceived disability and requires reasonable accommodations for disabilities.

96. SCS's actions in discriminating against Mr. Johnson because of his perceived disability and refusing to accommodate his disability were committed with deliberate intent to harm Mr. Johnson and his federally protected rights or, alternatively, with reckless disregard for his rights to be free from discrimination because of his disability and to receive reasonable accommodation for his disability.

97. The effect of SCS's above-mentioned conduct has been to deprive Mr. Johnson of equal employment opportunities and benefits due to him.

98. The actions taken against Mr. Johnson by SCS have caused him to suffer both monetary and non-monetary damages.

99. As a direct and proximate result of SCS's unlawful employment practices, Mr. Johnson suffered injuries for which he is entitled to recover equitable

relief and compensatory damages, including economic losses and emotional distress, attorney's fees, and costs of litigation.

**COUNT IV**
**Interference in Violation of the ADA**

100. Plaintiff incorporates by reference all the preceding paragraphs of the Complaint.

101. At all times relevant hereto, SCS has been subject to the requirements of Title I of the Americans with Disabilities Act, as amended (42 U.S.C. § 12101 *et seq*.)

102. At all times relevant hereto, Mr. Johnson was an individual with a disability as defined by the ADA, 42 U.S.C. § 12102 (1)(A).

103. At all times relevant hereto, Mr. Johnson has been a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111(8) and able to perform the essential functions of his job.

104. SCS interfered with Mr. Johnson's ADA rights when, through its leave administrator, it failed to provide Mr. Johnson's medical provider with the necessary documents to request medical leave as an ADA accommodation beyond October 2023.

105. SCS's failure to provide the necessary accommodation documents were done to interfere with Mr. Johnson's statutorily protected right to request leave as an ADA accommodation in violation of 42 U.S.C. § 12203(b).

106. SCS's interference with Mr. Johnson's accommodation request was committed with deliberate intent to harm Mr. Johnson, or alternatively, with reckless disregard for his rights to be free from interference with his federally protected rights.

107. The effect of SCS's above-mentioned conduct has been to deprive Mr. Johnson of equal employment opportunities and benefits due to him.

108. The actions taken against Mr. Johnson by SCS have caused him to suffer both monetary and non-monetary damages.

109. As a direct and proximate result of SCS's unlawful employment practices, Mr. Johnson suffered injuries for which he is entitled to recover equitable relief and compensatory damages, including economic losses and emotional distress, attorney's fees, and costs of litigation.

**COUNT V**
**Retaliation in Violation of the ADA**

110. Plaintiff incorporates by reference all the preceding paragraphs of the Complaint.

111. At all times relevant hereto, SCS has been subject to the requirements of Title I of the Americans with Disabilities Act, as amended (42 U.S.C. § 12101 *et seq*.)

112. At all times relevant hereto, Mr. Johnson was an individual with a disability as defined by the ADA, 42 U.S.C. § 12102 (1)(A).

113. At all times relevant hereto, Mr. Johnson has been a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111(8) and able to perform the essential functions of his job.

114. SCS was aware of Mr. Johnson's disability and his history and record of disability.

115. In the alternative, SCS regarded Mr. Johnson as an individual with a disability.

116. By taking medical leave in August 2023 and requesting intermittent leave from September 2023 onward, Mr. Johnson engaged in ADA-protected activity.

117. When Mr. Johnson requested intermittent leave for his disability beyond October 2023, SCS terminated his employment rather than engage in an interactive process.

118. SCS's actions were in retaliation against Mr. Johnson because of his utilization of ADA leave and/or his request for intermittent leave as an accommodation.

119. SCS's retaliatory conduct was committed with deliberate intent to harm Mr. Johnson and his federally protected rights or, alternatively, with reckless disregard for his right to be free from retaliation because of his attempt to exercise his rights pursuant to the ADA.

120. The effect of SCS's above-mentioned conduct has been to deprive Mr. Johnson of equal employment opportunities and benefits due to him because of his attempt to exercise his rights under federal law.

121. The actions taken against Mr. Johnson by SCS have caused him to suffer both monetary and non-monetary damages.

122. As a direct and proximate result of SCS's unlawful employment practices, Mr. Johnson suffered injuries for which he is entitled to recover equitable relief and compensatory damages, including economic losses and emotional distress, attorney's fees, and costs of litigation.

## COUNT VI
## <u>Retaliation in Violation of the FMLA</u>

123. Plaintiff incorporates by reference the preceding allegations as if fully restated herein.

124. Mr. Johnson was an eligible employee with a serious health condition as that term is defined by the FMLA and the accompanying regulations, specifically 29 U.S.C. § 2611(11) and 29 C.F.R. § 825.114.

125. SCS received notice that Mr. Johnson was experiencing FMLA-qualifying event prior to his taking FMLA-protected leave in August 2023.

126. SCS was aware that Mr. Johnson was in the process of requesting additional FMLA leave beyond October 2023 at the time of his termination.

127. By terminating Mr. Johnson's employment, SCS retaliated against Mr. Johnson for his utilization of FMLA-protected leave and/or for his attempt to attempting to exercise his right to take additional intermittent leave beyond October 2023.

128. SCS's actions in retaliating against Mr. Johnson for exercising his rights under the FMLA were committed with reckless disregard for his right to be free from discriminatory treatment on account of his exercise of his rights under the FMLA, specifically 29 U.S.C. § 2615(a)(2).

129. The effect of SCS's actions has been to deprive Mr. Johnson of a job, as well as income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits due to him, because of his attempt to exercise of his rights under the FMLA.

130. As a result, Mr. Johnson is entitled to both equitable and monetary relief for SCS's violation of the FMLA, specifically 29 U.S.C. § 2617(a)(1)(A) and (B) – including, but not limited to, back pay, front pay or reinstatement, attorneys' fees and costs of litigation.

131. Mr. Johnson is also entitled to liquidated damages for SCS's willful violation of his rights under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii).

**COUNT VII**
**Interference with FMLA-protected Rights**

132. Plaintiff incorporates by reference the preceding allegations as if fully restated herein.

133. Mr. Johnson was an eligible employee with a serious health condition as that term is defined by the FMLA and the accompanying regulations, specifically 29 U.S.C. § 2611(11) and 29 C.F.R. § 825.114.

134. SCS received notice that Mr. Johnson was experiencing FMLA-qualifying event prior to his taking FMLA-protected leave in August 2023.

135. SCS was aware that Mr. Johnson was in the process of requesting additional FMLA leave at the time of his termination.

136. By terminating Mr. Johnson's employment while he was in the process of requesting intermittent FMLA leave beyond October 2023, SCS interfered with Mr. Johnson's right to take intermittent FMLA-protected leave.

137. SCS's actions in interfering with Mr. Johnson's rights under the FMLA were committed with reckless disregard for his right to be free from discriminatory treatment on account of his exercise of his rights under the FMLA, specifically 29 U.S.C. § 2615(a)(2).

138. The effect of SCS's actions has been to deprive Mr. Johnson of a job, as well as income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits due to him rather than honor his rights under the FMLA.

139. As a result, Mr. Johnson is entitled to both equitable and monetary relief for SCS's violation of the FMLA, specifically 29 U.S.C. § 2617(a)(1)(A) and (B) – including, but not limited to, back pay, front pay or reinstatement, attorneys' fees and costs of litigation.

140. Mr. Johnson is also entitled to liquidated damages for SCS's willful violation of his rights under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and that the following relief be granted:

a) Grant Mr. Johnson a judgment in his favor against SCS under all counts of this Complaint;

b) Order SCS to make Mr. Johnson whole by providing for his out-of-pocket losses as well as back pay in an amount equal to the sum of any wages, salary, employment benefits or other compensation denied or lost as a result of SCS's unlawful and discriminatory acts, together with interest thereon, all in an amount to be proven at trial;

c) Order that Mr. Johnson be awarded front pay;

d) Order SCS to compensate Mr. Johnson for mental and emotional damages suffered as a result of SCS's unlawful and discriminatory acts;

e) Award Mr. Johnson pre- and post-judgment interest at the maximum rates allowable by law;

f) Grant to Mr. Johnson liquidated damages for SCS's willful violations of the ADEA;

g) Grant to Mr. Johnson liquidated damages for SCS's willful violations of the FMLA;

h) Grant Mr. Johnson a jury trial on all issues so triable;

i) Grant to Mr. Johnson his reasonable attorney's fees and reasonable expert witness fees together with any and all other costs associated with this action; and

j) Grant such additional monetary and equitable relief as the Court deems proper and just.

Respectfully submitted this 27th day of August 2026.

LEGARE, ATTWOOD & RAGAN, LLC

**Cheryl B. Legare**
Georgia Bar No. 038553
cblegare@law-llc.com
David J. French
Georgia Bar No. 410443
djfrench@law-llc.com

Decatur Town Center Two
125 Clairemont Avenue, Suite 515
Decatur, Georgia 30030
Tel: (470) 823-4000
Fax: (470) 201-1212

*Counsel for Plaintiff*